FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID F.,[1] | No.  1: 25-cv-03061-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Due to intellectual disorder, depressive disorder, anxiety disorder, and alcohol abuse disorder, Plaintiff David F. claims that he was unable to work fulltime for the closed period between May 1, 2015, and February 1, 2020, and applied for disability insurance benefits and

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

supplemental security income benefits.[2] He appeals the denial of

benefits by the Administrative Law Judge (ALJ) on the grounds that

the ALJ failed to consider Listing 12.05(C); improperly analyzed the

opinions of the examining medical sources and treating medical

sources, Dr. Miller, Dr. Teal, Dr. Marks, and Dr. Weiss; and improperly

assessed Plaintiff's credibility.  As is explained below, the ALJ erred.

This matter is remanded for further proceedings.

## I.    Background

In November 2016, Plaintiff filed applications for benefits under

Title 2 and Title 16, with both applications claiming disability

beginning May 1, 2015, based on the mental impairments noted above.[3]

Plaintiff's claim was denied at the initial and reconsideration

phases.[4] After the agency denied Plaintiff benefits, ALJ Steve Lynch

held a hearing in March 2019, at which Plaintiff appeared with his

---

[2] Plaintiff returned to what appears to be an accommodated work

position on February 1, 2020.  AR 595-596, 597-598.

[3] AR 204-27, 208-216.

[4] AR 137-145, 148-154.

representative.[5]  Plaintiff and a medical expert and a vocational expert testified.[6]  On April 8, 2019,  ALJ Lynch issued an unfavorable decision, and Plaintiff appealed to the Appeals Council.[7] In April 2020, the Appeals Council denied Plaintiff's appeal, and he filed in this court.[8] This Court entered an order affirming the ALJ decision but in March 2022, the U.S. Court of Appeals for the Ninth Circuit issued an order reversing the District Court's affirmation and remanded the case for further development of the medical record.[9]  The Appeals Council remanded the case back to the ALJ for further proceedings.[10] In October 2023, ALJ Timothy Mangrum held a hearing at which Plaintiff

---

[5] AR 36-67.

[6] *Id.*

[7] AR 13-35, 201.

[8] AR 1-6, 650-716.

[9] AR 665, 674.

[10] AR 717-720.

appeared with his representative.[11] Plaintiff and a vocational expert testified.[12]

After the hearing, ALJ Mangrum issued a decision denying benefits.[13] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[14] As to medical opinions, the ALJ found:

- The opinions of non-examining medical advisor John Simonds, MD, to be entitled to great weight.

- The opinions of non-examining, state agency evaluators B. Eather, PhD, and J. Robinson, PhD, to be entitled to significant weight.

- The ALJ incorrectly attributed the opinions of a non-medical expert disability adjudicator, Pamela Mildenberger,

---

[11] AR 589-620.

[12] *Id.*

[13] AR 557-588.  Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[14] AR 568-573.

to those of a medical source and found them to be entitled to great weight.[15]

- The opinions of non-examining, state agency evaluator Wayne Hurley, MD, to be entitled to great weight.

- The opinions of treating sources Charles Miller, MD, and Jeff Teal, PhD; the opinions of examining sources K.N. Marks, PhD, Peter Weiss, PhD, and C. Williams, MD; and the opinions of non-examining state agency evaluator R. Eisenhauer, PhD, to be entitled to little weight.[16]

The ALJ also considered the record of Global Assessment of Functioning (GAF) scores in the 40's, which are indicative of a serious impairment in social or occupational functioning and found the scores

_____

[15] AR 574, 99.

[16] AR 573-580.

to be entitled to little weight.[17] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. Plaintiff had not engaged in substantial gainful activity between May 1, 2015, and February 1, 2020, but has engaged in substantial gainful activity after February 1, 2020.

- Step two: Plaintiff had the following medically determinable severe impairments: intellectual disorder; depressive disorder; anxiety disorder; and alcohol abuse disorder. At step two, the ALJ also found that Plaintiff's medically determinable impairments of hypertension, dextroscoliosis, and back pain are nonsevere.

---

[17] AR 580.  American Psychiatric Association, *Global Assessment of Functioning*, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (last viewed November 3, 2025).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with specific consideration of Listing 12.05.

- RFC:  Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

  [Plaintiff] is limited to jobs involving simple work-related instructions, tasks and decisions in a predictable work setting with only occasional changes in the work setting.  [Plaintiff] cannot have interaction with the general public.  [Plaintiff] is limited to only incidental interaction with coworkers.  [Plaintiff] can never perform tandem tasks or work in close cooperation with coworkers. [Plaintiff] is able to have normal interaction, as needed, with supervisors.

- Step four: Plaintiff is unable to perform his past relevant work as a short order cook.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a

Kitchen Helper (DOT 318.687-010), Hand Packager (DOT 920.587-018), and Laundry Worker II (DOT 361.685-018).[18]

Plaintiff timely requested review of the ALJ's decision by this Court.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[19] and such error impacted the nondisability determination.[20] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[18] AR 563-581.

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[20] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

### III.   Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when he failed to consider Listing 12.05C, which was deleted after Plaintiff filed his claim but prior to adjudication of his case; erred in his consideration of the medical expert opinions, and specifically in failing to follow the directive of the Court of Appeals to develop the medical record; and erred in his consideration of Plaintiff's subjective claims. The Commissioner

---

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

counter-argues that the ALJ properly considered the amended version of Listing 12.05 that was amended after Plaintiff filed his claim and contained only 12.05(A) and 12.05(B); properly considered the medical opinion evidence; and adequately explained his consideration of Plaintiff's subjective complaints.  The Court disagrees in part with the Commissioner. As is explained below, the ALJ's analysis of the medical opinion evidence contains consequential error and he failed to properly develop the record as directed by the Court of Appeals.  Additionally, the Court finds the Commissioner's arguments regarding the applicability of Listing 12.05(C) to be flawed.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by discounting the medical opinions of both treating medical sources and examining sources, instead giving greater weight to the opinions of the non-examining state agency evaluators and the medical expert who appeared at the 2019 hearing; erred by failing to consider Listing 12.05(C); and erred in his consideration of Plaintiff's subjective complaints. Plaintiff argues that the reasons given by the ALJ to discount the medical opinions of

the treating and examining sources are the same reasons found to be inadequate by the Court of Appeals, thereby violating the law of the case. The Commissioner argues the ALJ adequately articulated his reasoning to give greater weight to the opinions of the medical advisor. After considering the medical opinions in question, the medical evidence of record, and the reasons given by the ALJ to discount Dr. Teal's opinions, the Court determines the ALJ's evaluation of the medical opinions of Dr. Teal, Dr. Miller, Dr. Marks, and Dr. Weiss is not supported by substantial evidence.

1.    <u>Standard</u>

When Plaintiff filed his initial disability application, medical opinions were to be assessed based on the nature of the medical relationship the claimant had with the medical provider. When a treating physician's or evaluating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial

evidence.[22] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[23] may be rejected for specific and germane reasons supported by substantial evidence.[24]

2.    <u>The Court of Appeals Directive to Develop the Record on Remand</u>

In its opinion, the Court of Appeals for the Ninth Circuit reversed the decision of the District Court and remanded the case to the Commissioner for further proceedings.[25] The Ninth Circuit articulated the following:

> In reaching his conclusion as to off-task work, the ALJ relied on the testimony of the consulting physician.

---

[22] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[23] *See* 20 C.F.R. § 404.1502 (defining who is an acceptable medical source for claims filed before March 27, 2017).

[24] *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[25] AR 674.

However, treating psychologist Teal opined that Farnsworth would be off task 21-30% of the time and would miss 2 days of work a month. Treating physician Miller stated that Farnsworth would likely miss 4 or more days of work a month. Examining psychologist Weiss opined that Farnsworth would have "severe" difficulty maintaining attendance or completing a normal workday. And examining psychologist Marks assessed limitations similar to those identified by Weiss.

The significance of these opinions was demonstrated by the vocational expert, who testified at the hearing that a 10% off-task rate is "kind of the cutoff point," such that someone who is off task 10% of the time or more "is not likely to maintain employment" of any kind—and, thus, would qualify for benefits.[26]

The Ninth Circuit went on to hold:

The ALJ rejected those opinons by simply stating that the consulting physician disagreed with them.  In fact, the consulting physician stated that he could not provide a figure as to the amount of time [Plaintiff] would be off task in a work environment.

Further, while the ALJ explicitly referenced and gave "little weight" to psychologist Teal's projected off-task rate of 21-30%", the ALJ provided no specific explanation for why it credited this portion of the consulting physician's opinion more strongly than Teals, or for how much lower that 21% it assumed the off-task rate to be.  Only by implication did the ALJ determine that "Plaintiff's off-task rate would be less than 10%.  There is no record support for this conclusion.

_____

[26] AR 676-677.

1
2
3
4
5

At most, the evidence on this issue is ambiguous and "[a]n ALJ's duty to develop the record further is triggered…when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v Massanari, 276 F. 3d 453, 459-60 (9th Cir. 2001).[27]

3.   Medical Records Considered by the Court of Appeals

    a.   *Dr. Marks*

On August 25, 2016, Plaintiff was examined by N.K. Marks, PhD, at the request of the Washington State Dept. of Social and Health Services (DSHS).[28] Dr. Marks provided a detailed report that included a psychosocial history, medical and treatment history, education and work history, substance abuse history and activities of daily living report.[29] Plaintiff reported that his father was verbally abusive in his childhood and this gave him anger issues, that he had married when he was young for one month and did not know if he was divorced, and that he spoke with his mother and cousin.[30] Plaintiff reported that he loses

6
7
8
9
10
11
12
13
14
15
16
17
18

---

[27] AR 678.

[28] AR 471-478.

[29] AR 471-472.

[30] AR 471.

19
20
21
22
23

his temper easily when at work, was diagnosed as learning disabled and mentally retarded and received special education, and that he was bullied in school.[31] Plaintiff reported that he attended AA in the past and presently attended therapy and took medication for anger, anxiety, and depression.[32] Plaintiff said he lived with his mother and cousin and could cook, clean, and bathe himself but could not remember to take medications, shop on his own, pay his own bills, take public transportation, read, write, do math, drive, or obtain a license.[33]

On mental status examination, Plaintiff was moderately groomed and spoke with well-organized but simple speech.[34] He was cooperative and friendly and was in Dr. Marks' opinion a childlike person who could be easily exploited.[35] His mood was anxious but his affect was

---

[31] AR 472.

[32] *Id.*

[33] *Id.*

[34] AR 475.

[35] *Id.*

relaxed and not consistent with mood.[36] Plaintiff was oriented with normal perception and thought process, but his memory was not within normal limits.[37] He could immediately recall 3 digits forward and 2 backward, could not draw overlapping polygons, could not perform simple math, and could not remember any of three items after a delay.[38] Plaintiff had a very limited fund of knowledge and could only answer two of eight questions, had impaired abstract thought and could only answer two of six questions with very literal answers.[39] Plaintiff's concentration, insight, and judgment were within normal limits.[40]

Dr. Marks administered a WAIS-IV Intelligence test and it indicated that verbal comprehension and processing speed were borderline; and that perceptual reasoning, working memory, and

---

[36] *Id.*

[37] AR 476.

[38] *Id.*

[39] *Id.*

[40] *Id.*

general ability were extremely low.[41] Plaintiff's IQ score was 66.[42]

Dr. Marks stated that all areas were delayed and Plaintiff would have

significantly more difficulty understanding what he hears, learning,

and performing hands-on activities.[43] She stated that he had a weak

short-term and long-term memory; had poor visual motor planning and

executive functioning; is not mentally flexible; that once he learned a

task Plaintiff would find it difficult to do it a different way; he cannot

maintain two trains of thought; and he is easily distracted by others.[44]

Dr. Marks opined that his likely diagnosis was mild intellectual

disability.[45]

        *b.*   *Dr. Weiss*

     On August 31, 2018, Plaintiff was examined by Peter Weiss, PhD,

at the request of the Washington State Department of Social and

---

[41] AR 477.

[42] *Id.*

[43] AR 478.

[44] *Id.*

[45] *Id.*

Health Services (DSHS).[46] Dr. Weiss provided a detailed report that included a psychosocial history, medical and treatment history, education and work history, substance abuse history, and activities of daily living report.[47] Plaintiff reported that he had poor sleep and appetite, low energy, a loss of interest in activities, difficulty concentrating, and feelings of hopelessness and helplessness.[48] Dr. Weiss noted that Plaintiff had left school in the 10th grade and did not have a GED and that Dr. Marks' evaluation indicated a full scale IQ of 66.[49] Plaintiff reported that he lived with his mother and cared for his dogs and occasionally did chores, but spent most of his day listening to music.[50]

---

[46] AR 537-540.

[47] *Id.*

[48] AR 537.

[49] *Id.*

[50] *Id.*

On examination, Plaintiff's mood was depressed and his affect was dysthymic.[51] He was oriented, and his thought process, perception, and memory were within normal limits.[52] Plaintiff had a limited fund of knowledge and was not able to perform serial sevens.[53] Dr. Weiss diagnosed major depressive disorder, recurrent, moderate; intellectual disability, mild; and rule out alcohol use disorder.[54] He opined that Plaintiff would have a mild limitation in performing the following tasks: performing routine tasks without special supervision, making simple work-related decisions, being aware of hazards, and asking simple questions or asking for assistance.[55] He opined that Plaintiff would have a moderate limitation in the following tasks: understanding, remembering and persisting in tasks involving short simple instructions; adapting to changes in a routine work setting; and

---

[51] AR 540.

[52] *Id.*

[53] *Id.*

[54] AR 538.

[55] *Id.*

maintaining appropriate behavior in a work setting.[56] He opined that Plaintiff would have a marked limitation in learning new tasks.[57] He opined that Plaintiff would have a severe limitation in completing the following tasks: understand, remember, and persist in task involving detailed instructions; perform activities within a schedule, maintain attendance and be punctual; communicate and perform effectively in a work setting; complete a normal workday and workweek without interruption; and set realistic goals and plan independently.[58]

### c.    *Dr. Miller*

On June 25, 2018, Plaintiff's primary medical doctor, Charles Miller, MD, completed a medical report form.[59] He indicated that he first saw Plaintiff on July 17, 2017, and last saw him on May 9, 2018.[60] He stated that Plaintiff's diagnoses are depression, hypertension,

---

[56] *Id.*

[57] *Id.*

[58] AR 538-539.

[59] AR 488-489.

[60] AR 488.

insomnia, alcohol abuse, anger, a history of learning disability, marijuana dependence, smoking tobacco, and mild intellectual disability.[61] He indicated that the details of clinical signs were in Dr. Teal's and Dr. Marks' reports.[62] Dr. Miller stated that medications included lisinopril, sertraline, Chantix, and vitamin D.[63]

Dr. Miller stated that Plaintiff has a poor prognosis and was unable to maintain employment due to intellectual disability and emotional lability.[64] He said that a work environment would cause Plaintiff's condition to deteriorate because he would become frustrated and angry due to his intellectual limitations and noted that Plaintiff was unable to manage his finances or shop alone.[65] He opined that Plaintiff would miss time from work due to medical impairments and opined that he would be absent from work 4 days or more a month due

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] AR 489.

[65] *Id.*

to emotional labilty.[66] Dr. Miller opined that the limitations existed since at least July 7, 2017.[67]

> ### d.     Dr. Teal

On April 19, 2018, Plaintiff presented to Jeff Teal, PhD.[68] Plaintiff reported that he was physically active but limited in social contacts to daily calls with a female friend in Texas.[69] Plaintiff's affect was limited in range but primarily euthymic, although Plaintiff reported daily restlessness, feeling fidgety, difficulty falling asleep, and fatigue.[70] Dr. Teal assessed major depressive disorder, recurrent, in full remission; and cognitive disorder.[71]

---

[66] *Id.*

[67] *Id.*

[68] AR 470.

[69] *Id.*

[70] *Id.*

[71] *Id.*

1

2

3

4

5

On May 16, 2018, Plaintiff presented to Dr. Teal.[72] Plaintiff reported that he was doing well with only restless leg syndrome and social contacts with his family and neighbors, as well as texting with a woman in Texas.[73]

6

7

8

9

10

11

12

13

On June 20, 2018, Plaintiff presented to Dr. Teal.[74] He reported doing well and having limited social contact with a woman in Texas, as well as his mother and family.[75] His affect was mildly euthymic.[76] Plaintiff reported being irritable, as he was not smoking and said that he was continuing to text a female friend in Texas but could not travel due to finances.[77] He reported that he was doing better with "some" social contacts.[78]

14

_____

15

16

[72] AR 485.

17

[73] *Id.*

18

[74] AR 487.

19

[75] *Id.*

20

[76] *Id.*

21

[77] *Id.*

22

[78] *Id.*

23

On July 31, 2018, Plaintiff presented to Dr. Teal.[79] He reported a consistently good mood and his affect was mildly euthymic.[80] On August 21, 2018, Plaintiff called the medical office six times and was quite irritated that his prescription for Chantix was not refilled.[81] On August 22, 2018, the doctor's office called Plaintiff to explain that the Chantix prescription was only to be filled once but he asked for a second course of treatment since he still craved cigarettes.[82]

On September 11, 2018, Plaintiff presented to Dr. Teal.[83] Plaintiff reported that he was under a lot of stress because he lost his appointment card and missed an appointment, he was tested for cognitive disorders and has an IQ of 68, and the woman he thought was his girlfriend had scammed him for several hundred dollars and did not

---

[79] AR 490.

[80] *Id.*

[81] AR 491.

[82] *Id.*

[83] AR 492.

show up to meet him.[84] Plaintiff reported that he was not socializing with anyone outside of his house.[85] His expression was mildly euthymic.[86]

On October 31, 2018, Plaintiff presented to Dr. Teal.[87] Plaintiff reported difficulty sleeping due to back pain, with irritable mood and increased use of alcohol and cannabis.[88] Plaintiff's expression was mildly dysthymic, with pain behaviors and he reported social contacts with his mother, cousin, and occasionally with neighbors.[89] Plaintiff reported sleep disturbance for half of the days in the week and restlessness and fidgetiness daily.[90] Dr. Teal assessed major depressive disorder, recurrent, in full remission; intellectual disability, mild; and

---

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] AR 503.

[88] *Id.*

[89] *Id.*

[90] *Id.*

alcohol use disorder, mild, and encouraged increased socialization.[91]

Dr. Teal noted that the diagnosis of intellectual disability was historic

but was consistent with clinical observation.[92]  On the same day,

Plaintiff presented to Dr. Miller for shoulder pain and Dr. Miller noted

that Dr. Teal supported Plaintiff's claim for SSI due to psychiatric

impairment.[93] Dr. Miller also noted fatigue due to sleep impairment.[94]

Dr. Miller assessed upper back pain, right; shoulder pain, right;

cervical radiculopathy; cognitive impairment; and history of low back

pain.[95]

On February 22, 2019, Dr. Teal completed a Medical Source

Statement.[96] Dr. Teal opined that Plaintiff would be mildly limited in

the following tasks: carrying out short, simple instructions; performing

---

[91] AR 503-504.

[92] AR 504.

[93] AR 505.

[94] AR 506.

[95] AR 507.

[96] AR 542-545.

activities within a schedule, maintaining attendance, and being punctual; working in proximity to others; completing a normal workweek or workday without interruptions; asking simple questions or requesting assistance; and responding appropriately to changes in the work setting.[97] He opined that Plaintiff would have a moderate limitation in the following tasks: remember locations and work-like procedures; understand and remember short, simple instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the public; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers without distracting them; maintain socially appropriate behavior; and be aware of normal hazards.[98] Dr. Teal opined that Plaintiff would have a marked limitation in completing the following tasks: understand and remember detailed instructions; maintain attention and concentration for extended periods; travel in unfamiliar places or

---

[97] AR 542-543.

[98] *Id.*

1
2

use public transportation; and set realistic goals or make plans

independently of others.[99]

3
4
5
6
7
8
9
10
11
12
13
14

With regard to the "B" criteria, Dr. Teal opined that Plaintiff

would have a moderate impairment in the ability to: understand,

remember, or apply information; interact with others; concentrate,

persist, or maintain pace; and adapt or manage oneself.[100] With regard

to the "C" criteria, Dr. Teal opined that Plaintiff met the criteria.[101]

Dr. Teal additionally opined that Plaintiff would be off-task for 21-30%

of the workday and that he would miss 2 days of work per month.[102]

Dr. Teal wrote the following narrative comment: "The patient has

made good progress on managing symptoms of the depression and

alcohol use disorder diagnoses. These diagnoses currently have

15
16
17
18

_____

19

[99] *Id.*

20

[100] AR 544.

21

[101] *Id.*

22

[102] *Id.*

23

minimal impact on the ability to work.  The cognitive disorder appears to be the primary disorder impairing ability to work."[103]

4.  Supplemental Medical Records Added to the File after the Court of Appeals remand

There was no development of the file by the ALJ on remand, but Plaintiff submitted additional medical records.

    a.  *Dr. Miller*

At a September 18, 2019 office visit with Dr. Miller, Plaintiff was noted to have a mildly dysthymic and anxious affect.[104] Dr. Miller administered a PHQ-9 test, which reflected a score of 5, indicating mild depression; as well as a GAD-7 test, which reflected a score of 10, indicating moderate anxiety.[105]

Plaintiff presented to Dr. Miller on March 4, 2019, "to complete SSI paperwork."[106] Dr. Miller indicated that he had last seen Plaintiff

---

[103] *Id.*

[104] AR 831.

[105] AR 831-832.

[106] AR 821-824.

on January 11, 2019, and had told Plaintiff that he needed to cut his alcohol intake that was 10-12 beers daily in January.[107] Plaintiff advised that he had completely quit smoking and had limited alcohol to 2 24 ounce beers per day.[108] Plaintiff reported fatigue, difficulty concentrating, that he was not able to learn to drive due to snow, and that it took 4 days to shovel a path in the snow from his house to the road.[109] Dr. Miller diagnosed anger, depression, and alcohol abuse.[110] Dr. Miller indicated that Plaintiff reported anxiety and depression, as well as fatigue during examination.[111]

Dr. Miller administered a PHQ-9 test, which reflected a score of 5, indicating mild depression; as well as a GAD-7 test, which reflected a score of 15, indicating moderate anxiety.[112] Dr. Miller diagnosed

---

[107] AR 821.

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] AR 822-823.

[112] AR 823-824.

improving anger, alcohol abuse, hypertension, borderline intellectual

disability, and moderate depression with anxiety.[113] Dr. Miller advised

Plaintiff to decrease alcohol intake from 48 ounces of beer a day to 36

ounces a day in the next two weeks, and then to decrease from 36

ounces of beer a day to 24 ounces a day.[114]

On March 4, 2019, Dr. Miller completed a second Medical

Report.[115] Dr. Miller stated that he first examined Plaintiff on July 17,

2017, and last saw him on March 4, 2019.[116] He stated that Plaintiff

was diagnosed with depression, alcohol abuse, cognitive impairment,

anger, and hypertension, and that his attached treatment notes

provided details of Plaintiff's symptoms and test results.[117] Dr. Miller

stated that Plaintiff was being treated with the medications Sertraline

---

[113] AR 824.

[114] *Id.*

[115] AR 819-820.

[116] AR 819.

[117] *Id.*

and Lisinopril, as well as psychotherapy and anger management.[118] Dr. Miller stated that Plaintiff's prognosis was poor without cessation of alcohol.[119] Dr. Miller indicated that working on a regular basis would cause Plaintiff's condition to deteriorate because he is intolerant of frustration and challenges due to cognitive impairments and would miss 4 or more days of work per month.[120] He wrote that Plaintiff has cognitive impairment due to alcohol abuse and closed head injury as well as baseline borderline intellectual functioning by history.[121]

### b.  *Dr. Teal*

On November 27, 2018, Plaintiff reported to Dr. Teal with reports that he was having less pain and better mood, and that he was able to sleep with pain medication.[122]

---

[118] *Id.*

[119] AR 820

[120] *Id.*

[121] *Id.*

[122] AR 842.

On December 20, 2018, Plaintiff presented to Dr. Teal for scheduled follow-up.[123] He reported that his mood had been very good but that his sleep had not been good due to pain.[124] On examination, his affect was mildly euthymic.[125]

On August 22, 2019, Plaintiff presented to Dr. Teal for follow-up and reported that he was doing mostly well, with good relationships with his mother and cousin.[126] His affect was mildly dysthymic with some restriction in range, but his hygiene was adequate.[127]

At a November 19, 2019 appointment, Plaintiff reported that Dr. Teal that he was "not doing very good."[128] On examination, Plaintiff had a mildly dysthymic affect with restricted range, he had fair

---

[123] AR 840.

[124] *Id.*

[125] *Id.*

[126] AR 834.

[127] *Id.*

[128] AR 827.

hygiene, and he had a slight tobacco odor.[129] Plaintiff reported that his mother had died and he had found homes for 2 of his mother's dogs and one of his own and was going to move to Yakima to live with his sister.[130] Plaintiff reported that he would stop drinking before moving in with his siter but had resumed using tobacco.[131] Dr. Teal administered a PHQ-9 test, which reflected a score of 6, indicating mild depression; as well as a GAD-7 test, which reflected a score of 7, indicating mild anxiety.

On December 18, 2019, Plaintiff presented to Dr. Teal.[132] He reported that he was doing better and that his relocation to living with his sister in Yakima was "going fairly well so far."[133] On examination, Plaintiff had a mildly dysthymic affect with restricted range, fair

---

[129] AR 827.

[130] *Id.*

[131] *Id.*

[132] AR 825.

[133] *Id.*

hygiene, slight tobacco odor, and fair insight and judgment.[134]  Dr. Teal administered a PHQ-9 test, which reflected a score of 3, indicating mild depression; as well as a GAD-7 test, which reflected a score of 7, indicating mild anxiety.[135]

5.    The ALJ's Consideration of Dr. Simond's and Dr. Teal's opinions regarding time off-task

The ALJ found the opinion of Dr. Simonds to be entitled to great weight and the opinions of Dr. Teal were entitled to little weight.

The ALJ articulated the following reasoning to support his consideration of Dr. Simond's opinion:

> Dr. Simonds provided the opinion that the claimant's mental health impairments caused a moderate limitation in understanding, remembering, or applying information; a mild to moderate limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild to moderate limitation in adapting or managing oneself. Dr. Simonds opined that the claimant is capable of performing simple, repetitive tasks with superficial or no contact with the public. Dr. Simonds also opined that the claimant is capable of superficial, occasional contact with co-workers. Dr. Simonds did not provide a definitive opinion of the percentage of time that the

---

[134] *Id.*

[135] AR 825-826.

claimant might be off-task in a work environment in response to a question from the claimant's representative. Rather, Dr. Simonds opined that, based on his review of the record, the claimant would certainly not be off-task 20% of the time in a work environment.

The undersigned gives great weight to the opinion of Dr. Simonds, an impartial medical expert and board certified psychiatrist. Dr. Simonds provided detailed testimony of his review of the record at the time of the March 5, 2019 hearing. Dr. Simonds' opinion is supported by his review of the record, including the claimant's routine treatment records with Dr. Teal, who consistently documented that the claimant reported improved functioning with therapy and compliance with medication, despite situational stressors. See e.g., Ex. 6F/1-12; 10F/1-6; 11F/1- 13, 17; 16F/1, 16, 18, 21, 23-24; 23F/1-4, 10-11, 16-17, 20-21. Dr. Simonds' opinion is also consistent with these routine treatment records with Dr. Teal, who did not document that the claimant presented with deficits in mental status, including difficulty concentrating, task follow-through, or understanding therapy recommendations.  Further, Dr. Simonds' opinion is consistent with the claimant's acknowledged ongoing activities – without any reports of needing breaks or being off-task – of caregiving, household chores, caring for multiple animals and household repairs. Moreover, Dr. Simonds' opinion is consistent with the claimant's prior unskilled work activities that were not accommodated, prior to his move from Idaho to care for his mother full-time.[136]

---

[136] AR 574.

The ALJ then articulated his consideration of the opinions of Dr. Teal.  First, he noted that Dr. Teal found Plaintiff had a moderate limitation in the following areas: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them; maintain socially appropriate behavior; and be aware of normal hazards.[137] He also noted that Dr. Teal also indicated that the claimant has marked limits in the following areas: understand and remember detailed instructions; maintain attention and concentration for extended periods; travel in unfamiliar places or use public transportation; and set realistic goals.[138]

The ALJ noted:

---

[137] AR 575.

[138] *Id.*

1

2
  For the "paragraph B" criteria, Dr. Teal indicated that the
3 claimant has moderate limitations in all four domains. Dr.
  Teal also indicated that the severity of the claimant's
4 mental disorders met the "paragraph C" criteria.
  Specifically, Dr. Teal indicated that there was evidence that
5 the claimant has minimal capacity to adapt to changes in
  his environment or to demands that are not already part of
6 his daily life. Dr. Teal also indicated that the claimant
  would be off-task "21- 30%" of the time during a 40-hour per
7 week schedule, and that he would likely miss two days of
  work per month. Ex. 12F/3. Further, Dr. Teal wrote that the
8 claimant "has made good progress on managing symptoms
  of the major depressive disorder and alcohol use disorder.
9 These diagnoses currently have minimal impact on ability
  to work. The cognition disorder appears to be the primary
10 disorder impacting ability to work." Ex. 12F/4. In February
  2019, Dr. Teal completed the same check-box form with the
11 same responses. Ex. 20F/1-4; 23F/27-30.[139]

12    The ALJ then went on to give a rather lengthy explanation

13 of his reasons to discount Dr. Teal's opinions:

14
  Although Dr. Teal is a treating provider, he did not provide
15 any objective findings to support his opinion of such
  extreme limitations. Rather, Dr. Teal's opinion on these
16 forms is not supported by his treatment records, in which
  the claimant consistently presents with improved mood and
17 functioning with therapy and compliance with psychotropic
  medication without deficits in mental status. Ex. 6F/1-12;
18 10F/1-6; 11F/1-13, 17; 16F/1, 16, 18, 21, 23-24; 23F/1-4, 10-
  11, 16- 17, 20-21. Dr. Teal's opinion of such limitations is
19 also inconsistent with the claimant's ability to serve as his
  mother's full-time caregiver, perform all necessary
20

21

22 [139] *Id.*

23

household tasks and repairs, take care of several animals and his prior unaccommodated work history at a fast food restaurant in Idaho, which he left to take care of his mother, rather than leaving due to issues with productivity or being "off-task" from essential job tasks.

Additionally, Dr. Teal's opinion that the claimant's cognitive disorder appears to be the primary disorder impacting his ability to work, and that he would be off-task "21-30%" of a workweek and absent two days per month is further inconsistent with Dr. Teal's own treatment records. In particular, while Dr. Teal indicated that there was a high probability of a "mild neurocognitive disorder" based on the brief cognitive screening he administered, the focus of Dr. Teal's psychotherapy was on the claimant's depressive disorder and alcohol use disorder. Ex. 6F/11-12; 10F/1-6; 11F/1-13, 17; 16F/1, 16, 18, 21, 23-24; 23F/1-4, 10-11, 16-17, 20-21. During routine treatment sessions in which the focus of treatment was on the claimant's mood, interpersonal relationships, caregiving for his mother, physically demanding activities and hobbies, Dr. Teal did not address any cognitive issues. Specifically, Dr. Teal did not document deficits in the claimant's understanding, memory, concentration, or ability to persist or maintain pace in any of these activities. Further, the claimant did not report that he had any difficulties with his ability to sustain these activities. To the contrary, during an appointment in May 2018, the claimant reported that he was "doing lots of yard work and getting lots of work done" around the house in addition to his longstanding routine of walking 8 to 10 miles per day with his dogs. During this visit, Dr. Teal also dropped the claimant's cognitive disorder NOS from the list of diagnoses. Ex. 16F/16; see also Ex. 16F/18, 21, 23-24. Although Dr. Teal added "mild chronic intellectual disability" or "intellectual disability, mild" to the list of diagnoses in late 2018 and 2019, Dr. Teal indicated that this impairment was "stable" and he did not address this condition with the claimant during treatment sessions. Ex.

23F/2, 4, 10, 16, 20. The claimant also denied any problems with concentration. Ex. 23F/2, 4. As such, the undersigned has reasonably concluded that Dr. Teal did not find that the claimant's mild intellectual disability caused significant functional limitations.

Moreover, other than the representative's cursory check-box form that it issues to medical sources, there is nothing in Dr. Teal's treatment notes that even suggests that the claimant would be off-task in a work environment, much less off-task 21-30% of a workday, and/or absent two days per month. Finally, Dr. Teal's opinion on these forms is inconsistent with the claimant's testimony at the October 2023 hearing, in which he reported that he started working at Walmart in February 2020, a few months after his mother passed away, and that his supervisors do not have issues with his pace or productivity. Due to the lack of support and consistency with his routine treatment records over several years, and the medical expert opinion of Dr. Simonds, who reviewed the entire record as of the March 2019 hearing, the undersigned gives little weight to Dr. Teal's opinions.[140]

6.   <u>Analysis</u>

Plaintiff argues that the ALJ erred in both his assessment of

Dr. Simonds' opinion and Dr. Teal's opinion as they pertain to time off

task. Plaintiff argues that the ALJ effectively gave the same reasoning

for his consideration of the medical opinions that the Court of Appeals

---

[140] AR 575-576.

deemed to be flawed and thereby violated the law of the case.  The Court agrees.

Initially, the Court notes that the ALJ's reasoning that there was no supporting evidence that Plaintiff suffered from a neurocognitive disorder based on "brief cognitive screening" is flawed.  The ALJ did not consider the consistency of Dr. Teal's finding regarding cognitive deficits with the formal intelligence testing administered by Dr. Marks, nor did he consider that as Plaintiff's long-term treating source Dr. Teal was aware of and had reviewed Dr. Mark's testing and report, which was contained in Dr. Teal's medical file.[141]

Moreover, Dr. Teal specifically referenced Dr. Mark's findings and noted that they were consistent with his own clinical observations.[142] Notably, Dr. Mark's testing was quite thorough and cannot accurately be described as "brief neurocognitive testing."[143] The ALJ did not consider the consistency of that testing with Dr. Teal's

---

[141] AR 41-478.

[142] AR 504.

[143] AR 575.

1    opinions.  Additionally, pursuant to the regulations in place at the time

2    that Plaintiff filed his claim, the ALJ was required to consider the long-

3    standing nature of Dr. Teal's observations but there is little suggestion

4    that the ALJ considered that Plaintiff was seen by Dr. Teal on a

5    monthly basis for a period of more than two years and then seen once

6    every two to three months thereafter. The fact that the "observations"

7    Dr. Teal referenced were made on numerous occasions over a period

8    spanning several years should have been considered.

9        Additionally, the ALJ failed to consider the general consistency of

10   the medical opinions of the examining sources Dr. Marks, Dr. Weiss,

11   and Dr. Williams with Dr. Teal's opinions.

12       The most concerning flaw in the ALJ's consideration of the

13   medical opinions on remand is that he appears to have disregarded the

14   primary direction given by the Court of Appeals – to further develop

15   the medical record as to the specific issue of time off-task.

16       It was the conclusion of the Court of Appeals that the medical

17   evidence regarding Plaintiff's ability to maintain a schedule was

18   "ambiguous at best" and that development of the record was

19

20

21

22

23

necessary.[144] The ALJ could have called an expert to testify, scheduled a consultative examination, or queried any of the treating or examining sources as to the percentage of time Plaintiff would be expected to be off task.  None of those steps were taken.  Instead, the ALJ relied upon his own non-expert opinion that Plaintiff would not be off-task for "any" amount of time.[145] It is unlikely that an individual with even a mild impairment would not be off-task for any amount of time. Based on this record, it is clear that Plaintiff suffers from a cognitive disorder and, at the least, a mild overlaying mental impairment.

The Court concludes that a remand is warranted for the ALJ to properly develop the record and to obtain expert opinion as to the expected time off-task during the relevant period. As noted above, the ALJ has several options available to him to develop the record.

**B.    Step Three (The Listings): Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at step three by failing to

---

[144] AR 678.

[145] AR 580.

consider Listing 12.05(C), which was rescinded after Plaintiff filed his claim but before it was adjudicated.  Because the case has been remanded for development of the medical record, the Court briefly addresses this issue.

    1.   <u>Standard</u>

    If a claimant meets all the listing criteria, she is considered disabled at step-three. A claimant who does not meet the listing criteria may still be considered disabled at step-three if her impairment(s) medically equal a listed impairment.[146] Medical equivalence can be established three ways, one of which is:

> If an individual has an impairment that is described in the listings, but either:
>
>   a.  the individual does not exhibit one or more of the findings specified in the particular listing, or
>   b.  the individual exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

---

[146] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

then we will find that his or her impairment is medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria.[147]

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairments meet or equal one of the specified impairments set forth in the listings.[148] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[149]  However, the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[150]

---

[147] *Id.*

[148] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

[149] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

[150] *Lewis,* 236 F.3d at 513.

Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[151]

2.    The ALJ's Findings

Here, the ALJ considered Listing 12.05, as it was amended effective January 17, 2017, and failed to consider 12.05(C). Listing 12.05(C) provided that the listing was met if a Plaintiff could establish that they met the following 2 criteria:

1) A valid verbal, performance, or full scale IQ of 60 to 70;

2) An overlaying physical or mental impairment that imposed am additional and significant limitation of a work-related function; and

3) Evidence demonstrating that the intellectual disorder existed prior to Plaintiff attaining age 22.[152]

Listing 12.05(C) was rescinded effective January 17, 2017, and

---

[151] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[152] See POMS DI 34132.009.

Listing 12.05 was amended to include on 12.05(A) and 12.05(B).[153]

3.  <u>Analysis</u>

Plaintiff argues that in an unpublished opinion the Court of Appeals for the Ninth Circuit held that "Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [Plaintiff's] application under the listings in effect at the them that [he] filed [his] application."[154]

The Commissioner counter argues that the agency explained that the revised version of Listing 12.05 should be applied based upon the date of the decision and not the application date.[155] Additionally, the

---

[153] See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, *available at* 2016 WL 5341732 (Sept. 26, 2016).

[154] ECF No. 8, citing *Maines v Colvin*, 666 F. App'x 607, 609 (9th Cir. 2016)(unpublished), citing *Ball v Massanari*, 254 F.3d 817, 820-21 (9th Cir. 2001).

[155] ECF No. 12, citing Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, *available at* 2016 WL 5341732 (Sept. 26, 2016).

Commissioner cites two unpublished district court opinions.[156]

The Court notes that although the Commissioner is correct that *Maines* is an unpublished opinion and therefore has merely persuasive value, it is an unpublished opinion from a higher-level court and therefore has greater weight than the two district-level opinions cited.

Additionally, the Court notes that in *Maines*, the Court ruled that a prior version of the amended listing for endocrine disorders was to be applied because it was effective on the date of the claimant's filing. That listing was amended in 2011, and the agency published notice of the change to the listing with language identical to that referenced by the Commissioner in his brief and contained in the agency's publication of the change to Listing 12.05.

The identical language of both publications states:

This means that we will use these final rules on and after their effective date in any case in which we make a

---

[156] ECF No. 12, citing *James A.K. v. Comm'r of Soc. Sec., 3:18-cv-00795-CL, available at* 2019 WL 5722203 (D. Ore. Nov. 5, 2019), *Andres G. v. Comm'r, Soc. Sec. Admin.*, 3:17-cv-00597-JE, *available at* 2018 WL 7690317 (D. Ore. Dec. 27, 2018).

1
2
3
4
5

determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.[157]

6
7
8
9

Because the Court of Appeals considered identical language when it rendered its decision in *Maines*, this Court concludes that absent further guidance from the Court of Appeals, the listing in effect at the time Plaintiff filed his claim is the applicable listing.

10
11
12
13

While the Court is aware that there is a split in other circuits as to this issue,[158] and is aware that the unpublished decision in *Maines* holds only persuasive value, the Court concludes based on the fact that

14

---

15
16
17
18
19

[157] *See* Federal Register: Revised Medical Criteria for Evaluating Endocrine Disorders. 76 FR 19692 (April 7, 2011), n. 3; *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016).

20
21
22

[158] *See Cox v. Kijakazi*, 77 F.4th 983 (D.C. Cir. 2023); *McCavitt v. Kijakazi*, 6 F.4th 692 (7th Cir. 2021); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) (en banc).

23

in *Maines*, the Court of Appeals based its ruling on the exact question posed here and a review of the exact language cited by the Commissioner, that the ruling in *Maines* should control.

**C.    Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ erred in his consideration of Plaintiff's subjective claims.  Because the Court has remanded the case for development of the medical record, the ALJ will be required to reconsider Plaintiff's subjective complaints.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[159] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[160]

_____

[159] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[160] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to

The Court finds that further development is necessary for a proper disability determination. Here, the ALJ should properly articulate his consideration of the medical evidence and medical opinions and make findings at each of the five steps of the sequential evaluation process, including Step Three.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

remand to the agency for additional investigation or explanation");

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1          IT IS SO ORDERED. The Clerk's Office is directed to file this

2    order and provide copies to all counsel.

3          DATED this 12th day of November, 2025.

4

5    _____

6              EDWARD F. SHEA
         Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23